# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE DIVISION

| | | |
|---|---|---|
| **VALLIE LANDRY** | * | **CIVIL ACTION NO. 10-1424** |
| **VERSUS** | * | **JUDGE HAIK** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Vallie Landry, born April 30, 1965, filed applications for a period of disability, disability insurance benefits, and supplemental security income on September 18, 2007, alleging disability as of November 1, 2004, due to physical and mental problems.

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the Commissioner's decision comports with all relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of Fed. R. Civ. P. 52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows:

**(1) Records from Iberia Medical Center dated November 11, 2006 to September 18, 2007**. Claimant had an abscess on her back lanced and drained on September 1, 2007, and September 18, 2007. (Tr. 179-88).

On November 11, 2006, claimant complained of abdominal pain. (Tr. 177). X-rays showed no abdominal abnormalities. On April 11, 2007, she presented again with abdominal and right flank pain. (Tr. 167). A CT scan showed a possible fibroid and small ovarian cysts. (Tr. 170).

**(2) Records from University Medical Center ("UMC") dated September 28, 2000 to October 2, 2007**. On September 28, 2000, claimant complained of left ankle pain. (Tr. 211). X-rays showed post-operative findings.

On April 3, 2002, claimant complained of abdominal pain. (Tr. 207). The diagnosis was ovarian cysts.

On April 16, 2007, claimant complained of intermittent abdominal pain. (Tr. 215). She was prescribed Prilosec, and instructed to stop smoking. (Tr. 217). An ultrasound dated May 8, 2007, showed no evidence of acute abdominal process. (Tr. 213).

On July 16, 2007, claimant reported chronic left side pain.  (Tr. 200).  She refused physical examination.  (Tr. 201).  The assessment was functional bowel syndrome.  (Tr. 202).  She was prescribed Levsin and Paxil.

**(3) Consultative Examination by Dr. Kenneth A. Ritter, Jr. dated January 8, 2008**.  Claimant complained of having all the "organs" of her body hurting all the time and periodic migraine headaches.  (Tr. 227).  Her medications included Clindamycin for an infection and Lortab for pain.

On examination, claimant was 5 feet 2 inches tall and weighed 194 pounds.  (Tr. 228).  Her abdomen was obese.  She had a normal gait and station, full range of motion of all of her joints, no evidence of atrophy or hand swelling, equal grip strength, good dexterity, and normal range of motion of her left ankle.  (Tr. 228-29).

Dr. Ritter's impression was moderate obesity, ongoing very heavy cigarette smoking, and significant problems with claimant's menstrual period per her report.  (Tr. 229).

In the Medical Assessment of Ability to do Work-Related Activities, Dr. Ritter found that claimant had no limitations.  (Tr. 230).  He determined that she could perform all postural activities frequently.  He could find no significantly disabling problems.  (Tr. 231).

### **(4) Records from UMC dated November 13, 2007 to March 17, 2009**.

On November 13, 2007, claimant had a cyst removed from her back. (Tr. 284-89). She presented with abdominal pain on January 7, 2008. (Tr. 281-83). She was prescribed Miralax and Milk of Magnesia.

On May 7, 2008, claimant presented with a sore tongue, sores in her scalp, and a rash on her face. (Tr. 278). The assessment was a scalp lesion and contact dermatitis. She returned again on May 27, 2008, for a rash and tongue pain with lesions. (Tr. 270). At an exam on July 29, 2008, she became angry, violent and threatened to "beat us up." (Tr. 268).

Claimant returned for removal of a cyst on her back on October 7, 2008. (Tr. 258-60).

A CT scan of the abdomen and pelvis on October 7, 2008, revealed bilateral adnexal cysts, a fibroid in the uterus, a small amount of free pelvic fluid, and tiny gastrohepatic lymph. (Tr. 255-56). A transabdominal and transvaginal pelvic sonogram on February 2, 2009, revealed lobular uterus most consistent leiomyomata (uterine fibroid). (Tr. 251).

On February 18, 2009, claimant complained of an STD and mouth ulcers for three years. (Tr. 249). She was raising her voice and complaining during the exam. The assessment was oral lesions and a rash.

On March 17, 2009, claimant continued to complain of an undisclosed STD for years. (Tr. 233). Her diagnosis was mouth ulcers/rash. (Tr. 235). She was referred for a psychological consult. (Tr. 233, 247).

**(5) Records from Iberia Medical Center dated December 18, 2007 to July 29, 2009**. On December 12, 2007, claimant was admitted for acute abdominal pain. (Tr. 304-19). She had a bizarre affect. (Tr. 314). X-rays showed an unremarkable bowel gas pattern. (Tr. 318).

On August 13, 2008, claimant presented with what she thought was an STD on her tongue which she had developed a year and a half prior. (Tr. 324). A culture was negative. (Tr. 335). The diagnosis was tongue pain. (Tr. 333).

On December 19, 2008, claimant reported having an STD. (Tr. 341). She was angry, frustrated, agitated, and paranoid. The impression was acute psychosis. (Tr. 342). She left the ER yelling at registration. (Tr. 346). Mental health treatment was recommended. (Tr. 351).

On July 29, 2009, claimant was admitted for an acute infected sebaceous cyst. (Tr. 303). The cyst was treated, and she was released. (Tr. 299, 303).

**(6) Claimant's Administrative Hearing Testimony**. At the hearing on September 28, 2009, claimant was 44 years old. (Tr. 21). She testified that she was 5 feet 2 inches tall, and weighed about 185 pounds. Her weight had

fluctuated since she had stopped working.

Claimant had a high school education. (Tr. 22). She no longer drove. She had past work experience as a hostess, cashier, waitress, and cook. (Tr. 23).

Regarding complaints, claimant reported that she had stopped working because of pain in her side and legs. (Tr. 27, 35). She stated that she had tried returning to work two or three years prior, but had to quit when her period started because she could not keep up. (Tr. 27).

Additionally, claimant complained of headaches during her period. (Tr. 24). She took over-the-counter medications for her complaints. She was also taking Acyclovir for a viral infection, but took only one pill daily instead of two because she could not afford it. (Tr. 28).

Claimant reported that she smoked about one pack a day. (Tr. 25). She said that she had quit smoking marijuana about two years ago, and had stopped drinking over 15 years ago. (Tr. 30-31). However, she later testified that she drank whiskey occasionally. (Tr. 34).

As to limitations, claimant stated that she could carry light bags from the grocery store when she was feeling well. (Tr. 25). She testified that she had anxiety about "not being able to hold my own weight in this world, being a bum." (Tr. 33).

Regarding activities, claimant testified that she spent most of her day sleeping. (Tr. 25). She stated that she did her laundry when she was feeling well. (Tr. 26). She grocery shopped about once a month. (Tr. 25). She mowed her lawn, which was about an acre, on a riding lawnmower. (Tr. 26, 32).

Additionally, claimant reported that she read Christian books, but said she could hardly see to read anymore. (Tr. 31). She also took care of four dogs. (Tr. 32).

**(7) The ALJ's Findings are Entitled to Deference**. Claimant argues that: (1) the ALJ erred in failing to have a vocational expert at the hearing, and (2) the ALJ erred in failing to find that her complaints met the listing for multiple gynecological disorders.

First, claimant argues that she has an "assortment" of gynecological problems, including fibroid cysts in her uterus, "crippling" menstrual cycles, and leg pain during her menstrual cycles. However, claimant has not identified which of the listings she meets. In any event, there is no evidence that she meets the listing for genitourinary or any other impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 6.00-6.01.

While claimant complained of abdominal pain on several occasions, x-rays showed an unremarkable bowel gas pattern and revealed no abdominal

abnormalities.  (Tr. 177, 318).  A CT scan showed revealed bilateral adnexal cysts, a fibroid in the uterus, a small amount of free pelvic fluid, and tiny gastrohepatic lymph, but no disabling condition.  (Tr. 255-56).  An ultrasound showed no evidence of acute abdominal process.  (Tr. 213).  A sonogram revealed lobular uterus most consistent leiomyomata, but nothing that would render claimant disabled.  (Tr. 251).

On consultative examination, Dr. Ritter found that claimant had no limitations.  (Tr. 230).  He could find no significantly disabling problems.  (Tr. 231).  Additionally, none of claimant's treating physicians on record have pronounced claimant disabled.  *Harper v. Sullivan*, 887 F.2d 92, 97 (5th Cir.1989).

Further, the ALJ noted that despite claimant's complaints, she had had little active treatment and took no prescription pain medications.  (Tr. 16).  It is well established that the ALJ is not precluded from relying upon the lack of treatment as an indication of nondisability.  *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990); C*hester v. Callahan*, 193 F.3d 10, 12 (1st Cir. 1999) (gaps in the medical record regarding treatment can constitute "evidence" for purposes of the disability determination); *McGuire v. Commissioner of Social Security*, 178 F.3d 1295 (6th Cir.1999) (gaps in treatment may reasonably be viewed as inconsistent with a claim of debilitating symptoms); *Franklin v. Sullivan*, 1993 WL 133774

(E.D. La. 1993); *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir. 1988) (failure to seek aggressive treatment and limited use of prescription medications is not suggestive of disabling condition).

Additionally, the ALJ noted that claimant mowed the lawn (which was an acre), performed maintenance on the mower, took care of three guard dogs and one small dog, and still smoked and drank whiskey occasionally. (Tr. 16). It is appropriate to consider the claimant's daily activities when deciding the claimant's disability status. *Leggett v. Chater*, 67 F.3d 558, 565 (5th Cir. 1995); *see also Shave v. Apfel*, 238 F.3d 592, 596 (5th Cir. 2001). Thus, the ALJ's finding as to credibility is entitled to great deference. *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000).

Next, claimant asserts that the ALJ should have used a vocational expert in light of her exertional and non-exertional limitations due to her pain associated with fibroid tumors and anxiety. [rec. doc. 11, pp. 6].

In this case, the ALJ recognized that claimant had a psych consult. (Tr. 16, 247). However, claimant never had any treatment related to this condition. Additionally, the ALJ considered the four functional areas for evaluating mental disorders under the listings and found that her impairment related to anxiety was not severe. (Tr. 16). A finding that claimant is not disabled at any point in the

five-step review is conclusive and terminates the analysis.  *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).  Thus, it was not necessary for the ALJ to reach the fifth step, which is whether a claimant can perform other work in the national economy, and consult a vocational expert.

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED**

**PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.  *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

Signed December 15, 2011, at Lafayette, Louisiana.

*/s/ C. Michael Hill*
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

11